Good morning, your honor, may it please the court, my name is Victor Mercado and I am the attorney for a felon in this matter. This case is an issue of statutory interpretation where the question is whether he as the beneficiary of an immigrant visa, who is currently over 21 years of age, is eligible for an immigrant visa as an immediate relative or whether she has to wait until a visa becomes available as an F-1 beneficiary due to the fact that her mother, the petitioner, naturalized after she turned 21. To understand the question, it's important to have a quick understanding of what the Child Status Protection Act or the CSPA does, which in essence is to provide certain levels of protection to certain children of some who are beneficiaries of certain immigrant petitions. Section 1151-F provides that a children is the age of a child, 1151-F-1 is the age of the child, the child's age is the age on the moment that the parent, a U.S. citizen, applied for the beneficiary. 1151-F-2, which is that issue here, the age of the beneficiary is the age of the petitioner on the date the petitioner naturalized. And then there's 1153-H, which provides certain limited protections for beneficiaries in the age based on processing of their visa, based on how long their visa petitions were processed by USCIS. So, if an individual was 22 years old, but it took CIS two years to process their petition, they could be considered to be under, they could be considered 20 years old under 1153-H if they are NF2. Counselor, this is Judge Katz. I think we're familiar with the statutory scheme in general. And I understand the textual arguments that could be made in support of your view. But could you help me understand this by just answering a few questions? Can you name one provision, one provision where Congress intended that the act of naturalization downgrades the visa status of the newly naturalized citizen's family? Oh, that downgrades the status? Yeah. I mean, you become naturalized and you're in a worse position than you were before. Is this something that Congress could really have intended? I mean, it seems like an absurd result. Well, I understand the concern about the absurd result. I would not characterize it as penalizing or anything along those lines. There is, it is true, there is no, there is, there's nothing in the statute that quote characterize the movement between visa categories as a downgrade or a punishment is not consistent with the statutory scheme. The statutory scheme is a complex system that allocates visas based on supply and demand, based on limits that Congress has provided. Maybe I'm misunderstanding. I thought that under the argument that you're making, that Congress essentially is giving worse treatment to the child of a citizen than to the child of an LPR. Is that not empirically true? No, I think, I think the issue why that, what the reason why one can get the impression from this case is because this particular beneficiary under the government's interpretation would have to wait on the F-1 category as opposed to get an immediate visa. And there is a wait on the F-1 category. But the reason for those wait times, it's not because Congress intended to punish the petitioner for naturalizing. It's just maybe, maybe, maybe they didn't intend to punish, but that's the effect, isn't it? That, I don't, I would disagree with the characterization as punishment. I would, I would point that the categorization, the categorization of F-1 has positives and negatives. The negative, I mean, the negative here for Ms. Diaz would be having a wait time for her visa. Not that she can never come. She will be able to come if she is eligible otherwise for a visa. It's just that it takes her longer. However, being classified as an F-1 provides the beneficiary the ability to bring derivative beneficiaries, which is something that would not be available to, to her if she was an F-2A. So, I understand the concern. Yes. So, I mean, you're, you're being very helpful. Thank you. Is it too late? I'm one. Is it, is it too late for Cuddle to return to the F-2A category? Is there any legal barrier to Diaz electing to remain in the F-2A category, I should say, which would make her immediately eligible for a visa? There is, under the statutory scheme, there are some provisions that permit certain, certain beneficiaries to, to opt out of certain conversions. There is none for, for the F-2A category. So, no matter, I mean, no matter what happened here, she was going to be, after her month naturalization, she was going to move to either, to the, either the immediate relative category or the F-1 category. There was no opting out. There's other categories that have opt out, like the F-2B category, but that is not available for her in this circumstance. So, thank you. Judge Loyer. Thank you. Thank you, Judge Katzmann. I, I have a question about Chevron deference, counsel, because you, you suggest that we should, as I understand it, but you can, again, correct me if I'm wrong, defer under Chevron to the BIA determination in Zamora Molina that biological age is the relevant age for purposes of 1151 F-2. Is that, is that the argument? One of the arguments? That's an argument, but we would also, we would also add that if there's any issues with, that if there's any issues with whether the board, but we understand that the board does not bind the State Department in their interpretation, which we understand that issue. However, we will point out that even if the board did not bind the State Department, the board is an agency that is charged with interpreting immigration laws. They have expertise as, as the adjudicator of any immigration-related issues. Go ahead. Go ahead. Oh, no, I just wanted to complete this thought by saying that the court could consider granting their, the board's opinion in a greater evidentiary way, a greater persuasive value, given the role of the board in immigration matters. Although, as I understand it, and this, I think, played out a little bit in the Ninth Circuit case named Tovar by, by Jeff Weinheit, I believe, the BIA itself was, it made that determination based on what it described as the unambiguous statutory language. So why would we even, since we're talking about the statutory language, why would we defer in any way, shape, or form to what the BIA has determined? I mean, it's just reading the statute says it's unambiguous, and we may disagree with that, but we've got an independent obligation to, to read the same statute. Would you agree with that? I, yeah, I, I, I understand, I understand the point you're making. So, so, so, so you're, so I think we can set aside the BIA for a moment analytically. And I'm not sure that I completely understood your answer to just Katzmann's question, which is mine, which is that, that everything that I've seen, but maybe there is something else in the legislative history that exists that I'm not aware of, suggests that Congress meant, and maybe this is another way to put it, to prefer beneficiaries who were the immediate relatives of naturalized citizens, as opposed to the children, as well, but to this case of lawful permanent residents. And here, far from being preferred, Ms. Diaz was put in a longer line. Is that right, as a just accurate description of what happened? And second, why, why then should we consider Congress's preference as strongly indicative of support for Judge Hall's and Tovar's reading of the, the three statutes? Well, I mean, we would, we would know that Congress did have an intent to provide ameliorative relief. The Supreme Court in Scalaba analyzed the CSPA and analyzed some of the comments from different members of Congress. And, and the conclusion is that the CSPA was not, like, even though there was an intent to, to, to provide relief to many of the children of many, of many petitioners, it was not intended to provide broad relief to every single age-out scenario, which is why I began by explaining the statutory scheme. If we look at 1151F, the, the relief provided by Congress consisted of precinct ages, because the problem there was that if the age was not frozen, a beneficiary would age out during the process, whereas, whereas for the preference categories, the relief that Congress provided through 1163H was, was, was not as broad as 1151F. It wasn't as, it wasn't freezing people's ages. It was providing for age reduction under certain circumstances and, and then seeing if the person aged out or not. So to the question about, about what, about, yeah, Congress, Congress intended to provide different relief to the, to U.S. citizens versus permanent, permanent residents or people in preference categories. But in light of the analysis of the court made in Scalaba, the court should be careful about interpreting that as meaning that Congress meant to provide broad relief to children in all circumstances. And the statutory scheme here... Wasn't, wasn't Scalaba about what sort of happens after someone turns 21? Not how to determine, not how to determine what turning 21 means? No, this is a different question than the one in Scalaba, but... Okay. I was just pointing out to the analysis in Scalaba about the legislative history. But the thing is that here, the way the statutory scheme works, the question is under 1151F2, we must look at her, at D.S.'s age on the moment the mom naturalized. And under the plain language of the statute, her age was the age, like her actual biological age on that date. Where does it say the actual, can you, can you point, and I'm, I'm almost being rhetorical, but the problem is it doesn't say the actual biological age. The only, the only thing that tells me, but you can point me to something else. The only language that tells me how to calculate the age appears in 1153H1. Yes, and the, and the language of 1153H1 is, states explicitly that it is for the purposes of determining age on the F2A and derivative categories. And the question here is not whether we're determining whether she's an F2A, it's determining whether she is an immediate relative under 1151F2. And, and the definition of age on 1151F2 does not reference 1153H or vice versa. And therefore, we have to rely on the canon, on the standards of statutory construction, examine the common ordinary meanings of words. And a term like age, the most common and ordinary understanding of a person's age is the time that passed, it's the actual biological age, the time that passed between a person's birth and the present. It's not this calculation that Congress provided for a limited purpose for certain specific immigrant categories. Thank you. Judge Carney, Judge Carney. I have no questions in addition to the questions my colleagues have already asked.  You'll have, you'll have, I believe, two minutes in rebuttal. I will not hear from your adversaries. Thank you, Your Honor.  Thank you, Your Honors. And may it please the court. My name is Brad Banas, and I, along with my, sadly, now-deceased co-counsel, Betty Leet, represent the appellees in this case. This court should affirm the lower court's decision because the plain language of inextricably intertwined statutory provisions require the agency to use an F2A beneficiary's statutory age to determine whether they are under 21 and convert to an immediate relative when the sponsor parent naturalized as a U.S. citizen. Those reasons, this court should affirm Judge Hall's decision below and avoid the government's invitation to create a circuit split between this circuit and the Ninth Circuit. Despite the voluminous briefing and the amount of words it takes to get to the description of the actual problem here, I think this is a straightforward application of a statutory definition. Through the Child Status Protection Act, Congress decided to make the word age a term of art for F2A beneficiaries because they were the most vulnerable to the evil the Child Status Protection Act was trying to eliminate, which is this concept of aging out. Through 1153H, it defined age for that one group of beneficiaries. So, an F2A beneficiary's age is, in fact, a term of art, and 1153H can be seen as the statutory definition of that term of art, that is, biological age less the amount of days it took for the agency to process the underlying application. That 1153H does not limit its application to any other provisions of the Immigration Nationality Act. It doesn't say this is only for particular purposes. It says when you are trying to find the age of an F2A beneficiary, here is how you do it. And when we look at 1151F, that conditions the eligibility for a separate benefit on the age of an F2A beneficiary. It imports that statutory definition by using those terms. And so, 1151F . . . Judge Kastner This is Judge Kastner. I understand your argument. But I'm interested in your responses to a couple of things. 1153A2 says that visas shall be allocated to qualified immigrants, including the minor children of LPRs. So, why doesn't that mean that when 1153H says its age calculation applies, and I quote, for purposes of 1153A2A, that it applies for making that F2A visa determination and not an immediate relative visa determination? Judge Kastner Yes, Your Honor. I think we have to look at the second . . . well, just past that dependent clause in 1153H1. It says, for purposes of subsections A2A, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph A of section 1101B1 of this title shall be made using. And then it establishes the calculation. So, what 1153H1 is actually doing is saying any time we have to determine whether someone is a child. So, it's under 21. There's two parts to the definition of child under 1101B1, that you're under 21 and you're not married, right? And so, 1153H1 is defining this to any time we have to determine whether an F2A person is a child under 1101B1, which contains the definition of child, we use this calculation. So, you see that exact same statutory language in 1151F1, and then you see a reference to that precise statutory language in 1151F2, where it says the determination described in paragraph 1. So, these provisions, three provisions working together, are referencing . . . are all serving the purpose of determining whether someone is a child under 1101B1. And of course, that comes into play under 1153A2A, but I do think the language of the provisions is broader, demonstrating that it goes beyond just the narrow analysis that Your Honor identified. But, so how do you respond to this, though, that the definition of child appears often, as you know, throughout immigration law, in a number of contexts in which 1153H obviously doesn't apply? So, how is it that a cross-reference by itself to a definitional provision show that 1151F2 incorporates the age calculation of 1153H? Um, I . . . as I understand the question, I think this is the answer, Your Honor, that in 1151F2, it identifies towards the bottom of that provision. The determination described in paragraph 1 shall be made using the age. The determination described in paragraph 1 is 1151F1, and that's where it says, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph A of section 1101B1. And so, 1151F2 is importing what it takes to satisfy the definition of child under 1101B1, and 1153H1 says every time we do that, it's done with the statutory age. And that's why I kind of characterize 1153H as a statutory definition of age for F2A beneficiaries, because there is no express cross-reference, Your Honor, but you don't see express cross-references every time the Immigration Nationality Act uses the word child, even though to figure out what a child is for immigration law, we have to go to the multifaceted section of 1101B. And I think this is just another example of why courts repeatedly refer to immigration law as a labyrinthine, right? There's . . . it's belabored with cross-references and words that in every other context would have a common and plain meaning, but for particular purposes, do have terms of art and statutory definitions, as we see here. And again, this goes back to the congressional intent that Your Honor asked my opposing counsel about. I mean, the answer to your first question is there are no provisions in the Immigration Nationality Act, and there's no legislative history to indicate Congress ever wanted to penalize anyone for becoming a U.S. citizen. And I think it goes a little bit further that while my opposing counsel properly notes that visa bulletins subject to change, maybe some categories become current, some don't, those times change, going from the preference system where that visa bulletin's in play to the immediate relative category is always beneficial. It's like going from a pool to the ocean. And in addition to just time, people who are categorized as immediate relatives, for example, if they're adjusting status inside of the United States, they can adjust status despite unlawful presence or despite unlawful working. And so there are other benefits accorded, not just speed and availability of visas, to going from the preference system into the immigrant, or excuse me, the immediate relative system. And I think Judge Hall— I frankly agree with you that I can't imagine that Congress would have wanted the results in this case. But how would you respond to the view that Congress just didn't anticipate this scenario and that it's up to Congress to fix it, not a court? Your Honor, I think this is where Judge Hall's opinion really builds upon and improves the case. In that Judge Hall identified additional legislative history that points out a couple of different things that Tovar did. First off, part of the Child Status Protection Act was intended to push people from the preference system into the immediate relative system because immediate relatives, the way the agency processes these, if they know a visa's immediately available, they jump on that and they get on those applications immediately. There's no wait until there's a visa available. And so what our brief references quite a bit, between 17 and 20, is that this was a way to eliminate backlogs. If you push people from the preference system into the immediate relative system, the adjudications go faster. That can't be forgotten in the intent behind the Child Status Protection Act. And so I do think that's one thing that says, or one piece of new congressional intent beyond what Tovar identified, that would indicate that Congress did intend this result. The second part is, if you look at the history of how these provisions came together before the Child Status Protection Act, before the Child Status Protection Act, the agency took the position that children do convert to immediate relatives without issue when their parent naturalizes. And again, when they came in and redefined the age of this particular category, I do think they intended beneficial consequences. And that meaning more preference children are going to be treated as immediate relatives than before. So I do not think this is an unintended consequence. I think this is exactly what Congress intended. And while- Let me turn the questions over to my colleague. Thank you. Judge Loyer or Judge Carney? Thank you, Judge Katzmann. I think you've actually- your questions covered my own questions. So thank you. I have no questions. Thank you, Judge Katzmann. Let me just ask what your view about the deference we owe the Zamora decision is. My colleague suggested that since the BIA found that the text was plain, that perhaps we don't owe it any deference, despite the BIA's expertise in the field. But I wonder whether that is your view as well, or whether we should just- you're free to just disregard it. Yes, Your Honor. First and foremost, the administrative law case is evading me right now. But when an agency determines the statute is unambiguous, there's simply no room for shut wrong deference. That's step one. It's unambiguous. We apply the language. And therefore, it becomes a legal question. And this court doesn't- or courts don't typically defer to legal interpretations of unambiguous text of an agency. And forgive me, I haven't taught my admin law class in a couple of semesters. So I'm not fresh on those cases. Second point is, if the agency is going to- There are several cases. There are a lot of cases, yes. I thought- I want to say brand X, but I could be wrong. Forgive me. The second part is, if the agency was going to rely on Zamora Molina, we would expect to see it on the face, the four corners of the decision here. It's simply not. They don't cite to it at all. And so there's some chainery doctrine issues. The final thing is, is these are completely different agencies. And so I do not believe the Department of State should get deference to another agency's decision. The Department of State hasn't exercised any expertise. It hasn't looked at it. And frankly, there are disparate interpretations of similar immigration provisions between the Department of State as well as the Department of Homeland Security and the Department of Justice. And so I do think the disparate agencies, again, counsel against giving it any deference. And I guess my last point is, it's the plain language. This court is the expert in defining what the law says. I think that's what Tovar basically said. And this court should follow it. And again, I do think this is a plain language analysis. I think that as an advocate, it's nice to have legislative history on your side. But this court need not even reach it. This is an application of a statutory definition. And the agency's interpretation it's suggesting would urge the court, is trying to basically say plain language means plain language in isolation, not plain language throughout these obviously intertwined and related statutes. And I think that's a misreading of the canons of statutory interpretation. Thank you. Thank you. We'll hear from your adversary who has two minutes in rebuttal. Thank you, Your Honor. I would like to make two quick points in rebuttal. First point is regarding a police argument that the child definition at 1101 incorporates or brings together 1153 age. I would like to point out that in Section 1101 of the immigration statute, it's a section that provides for many definitions. It is notable that Congress did not place a definition of age in 1101. Instead, they left it in a separate provision, 1153 age, and stating that it applies to 1153 B to A to A to the F to A category. So that is notable of a congressional intent to limit the definition of age and not have it to be applicable as broadly as plaintiffs argue. And second, the plaintiff's position that Congress intended relief to these beneficiaries ignores the fact that what Congress actually provided was a limited form of relief. So even if Congress may have wanted to convert individuals automatically to the immediate category, Congress did not provide so explicitly. And therefore, Congress's plain language should be applied here. Given that even if Congress did not explicitly provide for that in this statute. Mr. Katzman, can I ask a question? Sure. Mr. Katzman? Go ahead. Oh, okay. Mr. Mercado, do you know, I've actually got two separate different questions. One is a practical question. Do you know roughly how many people are in Ms. Diaz's or Ms. Cuthill's position? I don't have a number right now. What is the impact of the government's position? You don't have that? Okay. I don't have the impact of the number of cases that it would be impacted by. I know that there's... Inquiries, however, I would note that on the latest visa bulletin, the F2A category, the category that Ms. Diaz was at originally, is current. So there are visas available for anybody in the F2A category. So if an individual is in the F2A category, they can process their application before the parent naturalizes. Got it. Okay. That happened recently. But that was by regulation? No, that was a matter of supply and demand. It happens, yeah. It's just supply and demand. Yeah, supply and demand. There's less demand for F2A categories right now. And so your adversary also said that prior to the Child Status Protection Act, the government had, I guess, a framework pursuant to which children converted status without reference to age upon naturalization of the parent. Is that correct? My understanding of the situation before the CSPA is that there was no freezing of a person's age. So if a person, if a beneficiary, if a petitioner naturalized, then, I mean, they will convert to the immediate category. But if during the processing, they turn over 21, then they would age out of that category. And what if, and what F2 did was freeze that age. But if your honor would like, I can consult with the agency to ensure that that representation is accurate. That would also be helpful. Thank you. If you could then record a letter, that would be very useful with that information. Sure, I will do that. Thank you. As well as the information, if you can, about the impact. Understanding what you said, that the F2A category is current. So these are available. You can just confirm that. Thank you. The question is about the impact on, the impact on, of this petition in other cases? Of, yeah, the government's position in other cases. Okay. I mean, if it would be, you know, maybe, maybe, maybe not. It'd be one thing if Ms. Diaz and Ms. Cuthill were alone. But I would want to have a better understanding of the, of the impact across the nation. If you could have that, if you could have that to us by next Thursday, that would be, that would be very helpful. Sure, your honor. Thank you both for your very thoughtful arguments. The court will reserve decision. That does it for us today. The clerk will adjourn court. Court sends adjourned.